### THE EMILIA S. DE PEREZ.

(Circuit Court of Appeals, Fifth Circuit. February 8, 1918.)

No. 3129.

1. SHIPPING ☞84(3)—STEVEDORES—TACKLE—DUTY OF VESSEL.

Where a vessel furnished the tackle for use by stevedores, it owed a duty to the stevedores to use reasonable care to see that the tackle was fit for use, and the furnishing of tackle with defects which a reasonable inspection would have disclosed is negligence.

2. SHIPPING ☞86(2)—STEVEDORES—PERSONAL INJURIES—EVIDENCE.

On libel by a stevedore, injured in loading a vessel when a bale of cotton fell as the result of the breaking of a clevis furnished by the vessel, a finding that the defect in the clevis could have been ascertained by an ordinarily careful inspection *held* warranted under the evidence.

3. MASTER AND SERVANT ☞354—WORKMEN'S COMPENSATION ACT—APPLICATION TO STEVEDORES.

A stevedore employed by a Texas company was injured while loading a vessel. Under the Texas Workmen's Compensation Act (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h-5246zzzzz]) the stevedore asserted a claim against his employer and received payment from an insurer, with whom the stevedore's employer as well as the agents of the vessel had taken out insurance. *Held* that, as the Texas act was inapplicable to the stevedore's claim against the vessel, and as he asserted no claim against the insurer as an insurer of the vessel or its agents, such payment did not bar his claim against the vessel, but amounted at most to a pro tanto satisfaction.

4. APPEAL AND ERROR ☞932(1)—REVIEW—PRESUMPTIONS.

Where testimony showing a pro tanto satisfaction of libelant's claim was received, it must be assumed on appeal that the lower court gave proper effect thereto.

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Libel by E. P. McGowen against the steamship Emilia S. De Perez, claimed by Angel F. Perez. From a decree for the libelant, claimant and the sureties on his stipulation for release of the vessel appeal. Affirmed.

William B. Lockhart, of Galveston, Tex., for appellant.

Marsene Johnson, of Galveston, Tex., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The appellant was the claimant of the steamship Emilia S. De Perez, which was libeled by the appellee in an action seeking to recover damages for a personal injury received by him

-----

while he was in the employment of the Galveston Stevedore Company, which was loading the ship, as an independent contractor, in the port of Galveston.

[1] The libelant was injured on April 29, 1915, while working in the lower hold of the ship, by the fall of a bale of cotton, which was being loaded into the ship, and which struck him in its fall. The bale fell because of a defective clevis, to which was attached the hook which held the cotton, while it was being loaded. There was no dispute as to existence of a defect in the clevis that broke, or that it was partly an old break. The only matter in dispute was as to whether the defect could have been discovered by a reasonably careful inspection. The tackle, including the clevis, was furnished the stevedores by the ship, and it owed the duty to the stevedores to use reasonable care to see that the tackle was in fit condition for use. This would require of the ship to use reasonable care to inspect the appliances furnished, before they were used, and, if such reasonable inspection would have disclosed the defect before the clevis was used by the stevedores, the ship would have been negligent in failing to make the discovery and in furnishing the defective clevis.

[2] The appellant contends that the defect was not discoverable and that the accident was unavoidable. It is not claimed that the appellee was himself at fault. The evidence tended to show that there was a partly new and partly old break at the point of fracture. There was no evidence as to its condition before the accident, except as might be inferred from its condition after. There is no evidence of any specific inspection of the clevis by the ship or the stevedores before the accident happened. The witness Goudge, who was manager for the stevedore company, testified for the claimant that the ship furnished the equipment; that the tackle was not examined personally by him, or minutely by any one; and that, unless the hook was obviously too small, and objected to by the gang for that reason, no examination was made. This witness also testified that there was a rusty place in the break, but one that was not discernible from the outside. In response to an inquiry as to how rust could get inside, if there was no exposure to the outside, the witness said:

"That it would have to find an opening or kink or flaw in the welded part, and it appeared perfectly sound, but when it broke open it probably rusted half way through; that there could be a fibrous streak in the wire, that would not be discernible without looking at it with a magnifying glass."

Again he testified:

"That there was nothing you could see on the outside of the shackle to show there was any flaw in the welding at all, but there was a mark of rust in one edge of it, but the greater part of it was new."

The appellee testified that he saw the broken clevis right after the accident; that it showed black and an old break. His witness Page testified that he saw the clevis after it was broken, and did not piece together the broken parts, but that, if it had been put back in position, he thought the hole could have been seen going through it, though he

could not say this with positiveness, as he did not make the experiment.

We are not prepared to say that the District Judge erred in concluding from this testimony that the defect was one that would have been discernible by an ordinarily careful examination, especially as no such examination was made of it before the accident.

[3, 4] The appellant also contends that the decree was erroneous because of the asserted effect of the appellee's acceptance of the sum of $112.50 in the November succeeding his injury from the American Indemnity Company, with whom the Galveston Stevedore Company and the ship agents of the claimant's ship, for the benefit of the ship, had taken out insurance, as required by the Workmen's Compensation Act of the state of Texas. It is conceded that the provisions of the Texas statute are not applicable to the situation. Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, Ann. Cas. 1917C, 900. The contention is that the appellee, by having voluntarily asserted a claim against the Galveston Stevedore Company, his employer, under the Texas law, has elected to waive his remedy elsewhere.

Whatever force the argument might have, as against the appellee's right to now proceed against his employer, the Galveston Stevedore Company, we think it should be given no such effect against the right of appellee to pursue the ship. He was concededly not employed by the ship, and could not have been benefited by any insurance the ship had taken out to protect its employés, and he made no claim against the American Indemnity Company, as insurers of the ship or its agents, but only against the insurance taken out by the Galveston Stevedore Company to protect its employés, of whom appellee was one. The receipt taken by the American Indemnity Company recognizes this by its recitals. The release purports to be taken in favor of American Indemnity Company and the Galveston Stevedore Company only, so far as it applies to the Workmen's Compensation Act. As the appellee was not employed by the claimant, and could not have successfully asserted a claim to insurance taken out by the claimant or his agents for the employés of the ship, and as the appellee, in fact, made no such claim, and was paid nothing on account of such a claim we do not think he is precluded from pursuing the ship, unless, independently of the Texas act, the effect of the release was to satisfy his cause of action in full against both joint tort-feasors, the ship and the stevedore company; and appellant claims it should be given that effect.

What might have been the effect of the release, if it had not been executed with the understanding of both parties to it that it was to evidence the receipt of insurance paid appellee under the Texas Workmen's Compensation Act, we need not inquire. Its recitals show that both parties understood the Texas law to be applicable, and executed the release to carry out its terms. This being true, the release should be given no greater effect than the Texas law would, if applicable, have given to the receipt of the payments by the appellee. If the law had been applicable to the accident, the receipt of the stipulated insurance

would have precluded the appellee from suing his employer; not because the payments necessarily fully satisfied his cause of action, but because, under the Texas law, he was not permitted to pursue both remedies. The Texas law did not, however, preclude him from pursuing a stranger, who was jointly liable for his injury. In order to bar his action against a stranger, it would be necessary to show that he had been fully satisfied by the payment made to him for the cause of action for his injuries. This could only be done by showing an agreement on his part to accept them in full satisfaction, or by convincing the court that they were adequate in amount to that end. We think the utmost effect to be given the payments made to him and the release signed by him, either under the Texas Workmen's Compensation Act or at common law, would be to estop him from suing his employer and as a pro tanto satisfaction of his cause of action against a stranger. The evidence as to the amount received by appellee was before the District Judge, and we must assume that he gave it its legal effect in fixing the amount of the decree rendered.

The decree of the District Court is affirmed.